Robert W. Ottinger
THE OTTINGER FIRM, P.C.
79 Madison Avenue
New York, 10016
robert@ottingerlaw.com
Tel: 917-566-2037
Fax: 212-571-0505

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAROLINA DISTASI,<br><br>      Plaintiff,<br><br>      vs.<br><br>ROKT CORP.,<br><br>      Defendant. | **Civil Action No.:** 1:25-cv-6712<br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Karolina Distasi, by and through her attorneys, The Ottinger Firm, P.C., complaining of Defendant, Rokt Corp., alleges as follows:

**I.      INTRODUCTION**

1.     Plaintiff Karolina DiStasi brings this action against her former employer, Rokt Corp., for sexual harassment, systemic gender discrimination, unequal pay, hostile work environment, and unlawful retaliation. Plaintiff was employed as a Software Engineer and engaged in protected activity by raising concerns about Rokt's failure to address workplace misconduct including sexual harassment, pervasive gender inequity, and lack of diversity. Instead of investigating these concerns or remedying known disparities, Rokt marginalized, penalized, and ultimately terminated her. This Complaint seeks redress for Rokt's violations of the New York City Human Rights Law, the Equal Pay Act, and the New York Equal Pay Law.

**II.     THE PARTIES**

2.     Plaintiff Karolina DiStasi ("Plaintiff" or "Ms. DiStasi") is an individual residing in New York. She was employed by Rokt Corp. as a Software Engineer from April 11, 2023, until her termination on November 13, 2024.

3.     Defendant Rokt Corp. ("Rokt" or "Defendant") is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York. Rokt conducts substantial business in the State of New York and is an employer within the meaning of the applicable labor and anti-discrimination laws.

**III.    JURISDICTION AND VENUE**

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the Equal Pay Act of 1963, 29 U.S.C. § 206(d).

5.     This Court also has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

### IV. FACTS COMMON TO ALL CAUSES OF ACTION

7. Plaintiff was employed as a Software Engineer at Rokt on April 11, 2023, until her termination on November 13, 2024.

8. As one of very few women engineers in the Engineering Department at Rokt, she experienced and/or was exposed to numerous instances of sexist comments and raised concerns directly with senior leadership in hopes of fostering a respectful and equitable work culture.[1]

9. Plaintiff began experiencing a charged and overwhelmingly male-dominated hostile work environment in July 2023, which affected her emotional and mental wellbeing.

10. Plaintiff began speaking to her therapist about the hostility experienced at work and the absolute refusal by leadership to address systemic and pervasive gender discrimination.

11. By August 2023, she had to take medication for her anxiety and stress caused by her work environment.

12. Defendant also systematically failed to address Plaintiff's complaints, which she raised on various occasions, calling attention to company-wide practices of perpetuating or allowing misogynistic and sexist comments, behaviors, practices and policies that perpetuated a hostile work environment and discriminated against Plaintiff and other women employees on the basis of gender.

13. In or about October 2023, during a company sponsored happy hour, Plaintiff's manager, Alex Kourt, commented to her that he "loves" Eastern European women, knowing she is of Polish descent. In addition, Alex inappropriately asked her if Plaintiff planned on having children, commenting that she would make a great mother because she is nurturing. No male employees were asked similar personal questions.

14. Shortly after Mr. Kourt's inappropriate comments, an employee posted completely biased comments on a company-wide internal channel. Plaintiff filed her first complaint to Human Resources regarding both the comments and how the company responded to them, which was wholly inadequate.

---

[1] Claimant became aware of a previous complaint filed against Respondent in federal court by a former employee for sexual harassment, specifically naming CEO Bruce Buchanan (among others) as defendant and principal aggressor. *See Shah v. Rokt Corp, et al.,* 18-cv-04075-VSB (SDNY). This further solidified her belief that Rokt has long-standing practices of unlawful gender-based discrimination and harassment against its female employees and has continually failed to address them, or worse, continues to ignore and perpetuate them.

15. Despite being told by Human Resources that her report would be taken seriously and that they would be updating the employee handbook to reflect changes concerning employee conduct as a result of the inappropriate comments, no changes were ever made.

16. The following month in November 2023, Plaintiff filed another complaint with Human Resources regarding her coworker Joshua Stone's disrespectful and condescending communication with her, despite being peers. Human Resources conducted a mediation session between Plaintiff and Joshua, at which point a series of rules of engagement were established and agreed upon by the parties. However, after the session, the agreed upon rules were not followed by Joshua, nor enforced by Defendant.

17. In January 2024, Defendant began to establish a new employment tier for software engineers, including Plaintiff, who was previously assigned the "L3" status. The L3 engineering career designation split into two new tiers: L3A (the junior status) and L3B (the senior status).

18. Defendant placed *all* the women engineers who were previously considered L3 into the newly designated L3A status. In contrast, male engineers were split between the two tiers, with a substantial number of male engineers promoted to L3B.

19. Upon information and belief, several of the male engineers promoted to L3B had fewer years of experience and lower performance evaluations than the women placed in L3A.

20. Prior to the L3 split, Plaintiff had received a grade of "100" on her performance review. After the split, male engineers promoted to L3B received raises and advancement opportunities that were denied to the women engineers placed in L3A.

21. In February 2024, Plaintiff had a conversation with her supervisor, Mr. Kourt, regarding her interest and qualification for a promotion. During Plaintiff's performance review months before in October 2023, she had expressed interest in advancing to the L4 tier. At the time of her evaluation, Mr. Kourt expressed support for Plaintiff pursuing a promotion.

22. However, in their February and March 2024 conversations, Mr. Kourt stated he was only considering moving her to the L3B tier, but only if she completed a months-long project entirely on her own. Plaintiff had requested assistance due to her limited experience in certain areas, but her request was denied.

23. At the suggestion of her mentor, another Rokt employee, Plaintiff proposed that Mr. Kourt submit her for promotion during a period called "calibration," which would condition her promotion upon completion of her project. Mr. Kourt told Plaintiff that she brought up an "awkward conversation," and told her, "Why does everything have to be a negotiation with you?"

24. Plaintiff reported Mr. Kourt's conduct and his disregard for her engineering experience to Human Resources. She explained that Mr. Kourt repeatedly dismissed her contributions and instead deferred to her male colleagues when it came to decision-making. Rather than addressing Mr. Kourt's behavior, Defendant took no action, consistent with its pattern of ignoring prior complaints without consequence. Instead, Rokt proposed that Plaintiff transfer to another team under a different supervisor.

25. In February 2024, several media outlets released articles showing an exaggerated gender pay gap for female employees working for Defendant, noting a gender-based pay disparity of base pay with benefits of over 50% between male and female workers at Rokt.[2]

26. This was deeply concerning to Plaintiff, who believed that based on her performance, experience, and responsibilities, she had been unfairly placed in a lower job level than less qualified male colleagues. Plaintiff contacted Rokt leadership to understand why such a disparity existed

27. Plaintiff asked that Rokt provide all employees – not just her – with specific statistics regarding the percentage of women engineers Defendant had and was told that information was confidential.

28. Plaintiff contacted Rokt's CEO, Bruce Buchanan, who referred her to Chief Product Officer Bill Barton, who in turn referred her to HR specialist Ash Campbell. While Ms. Campbell and others in HR responded to Plaintiff's outreach and held follow-up meetings, no one ever provided the statistics or information she requested regarding gender equity. Her concerns were ultimately left

---

[2] The following articles proved of deep concern to Claimant, who received and read them when they were published: Tess Bennett, *IPO hopeful Rokt has largest gender pay gap of tech unicorns*, Financial Review (Feb. 27, 2024), https://www.afr.com/work-and-careers/workplace/ipo-hopeful-rokt-has-largest-gender-pay-gap-of-tech-unicorns-20240222-p5f717; Denham Sadler, *Major gender pay gaps in Australian tech firms*, Information Age (Feb. 27, 2024), https://ia.acs.org.au/article/2024/major-gender-pay-gaps-in-australian-tech-firms.html; *Blackface, booze, and blurred lines at the $2 billion tech firm Rokt*, Business Insider https://www.businessinsider.com/blackface-booze-blurred-lines-at-2-billion-tech-firm-rokt-2023-3.

unaddressed.

29.     Shortly after Plaintiff's inquiry into gender equity and pay disparity at Rokt, Plaintiff was moved to the Experiments Team under the leadership of Umair Butt.  After months of requesting and being told by Butt that Plaintiff would be put up for a promotion, Butt never promoted her.  Instead, he continued to comment on Plaintiff's personality characteristics rather than her performance or work abilities.

30.     Plaintiff raised this concern directly with Butt, pointing out that his feedback focused solely on her personality traits rather than her technical performance. She specifically asked for more substantive, skill-based feedback and cited published articles that described this pattern as a common form of gender bias in the workplace. Following this conversation, Butt's tone and demeanor toward Plaintiff noticeably shifted, and his criticism of her became more frequent and dismissive

31.     Plaintiff and two other women engineer colleagues formed the first official Women in Engineering meeting with Defendant to address institutional barriers to achieving diversity, including the gender pay gap.

32.     In Fall 2024, Plaintiff reported yet another incident of misogyny to Human Resources, where a senior engineering employee shared an offensive sample employee manual in a company-wide channel, stating that employees could learn about "raising the bar" from it.   The manual included quotes like "It's okay for the boys to be childish. If talent wants to draw a dick on the white board in the video or do something stupid, let them. (assuming they know all the risks and aren't missing context on why it's not safe) People like when we are in our natural element of stupidity. Really do everything you can to empower the boys when filming and help them make content. Help them be idiots."  The offensive manual also contained a section titled "NO DOES NOT MEAN NO."  Eventually, the post was taken down and a private apology was sent to Ms. Distasi, while the offending manager was promoted the following month.

33.     On November 11, 2024, Ms. DiStasi was part of the group of employees who reported to Human Resources a series of offensive and discriminatory posts that appeared on the Blind platform. This report was consistent with her ongoing efforts to call out discriminatory conduct at Rokt and occurred just days before her termination.

34. Ms. Distasi never posted any reviews on Blind and told Human Resources as much. However, due to her persistent and vocal complaints about the lack of diversity and the hostile work environment faced by herself and other women at Rokt, she became a target for retaliation.

35. On November 13, 2024, just two days after reporting the discriminatory posts on Blind, Rokt terminated Ms. DiStasi, citing vague and unsubstantiated performance issues. At the time, Ms. DiStasi had recently received strong performance evaluations and was under consideration for promotion.

36. The pretextual performance justification is unsubstantiated and meritless, as her evaluations prove.

## V. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
*Gendered Pay inequality*
(Equal Pay Act, 29 U.S.C. § 206(d))

37. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

38. The Equal Pay prohibits employers from discriminating among employees on the basis of sex by paying higher wages to employees of the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

39. To establish a violation of the Equal Pay Act, a plaintiff must show: (1) the employer pays different wages to employees of opposite sexes; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions.

40. In January 2024, Defendant restructured its engineering levels by dividing the "L3" engineering designation into two new tiers: L3A and L3B. All women engineers were assigned to the lower-paid L3A tier, while male engineers were divided between L3A and L3B. A substantial portion of male engineers were promoted to L3B, including several who, upon information and belief, had less experience and lower performance evaluations than Plaintiff and other women in L3A.

41. At the time of this restructuring, Plaintiff had recently received a perfect performance review and was on track for promotion, according to her manager. There were no material differences

in the job duties, responsibilities, or projects assigned to L3A versus L3B engineers, as evidenced by Plaintiff's own experience and her understanding of the work performed by her male counterparts. No clear explanation or criteria for the tier assignments was communicated to Plaintiff.

**SECOND CAUSE OF ACTION**
*Gender-Based Pay Disparity*
(New York Equal Pay Law, N.Y. Lab. Law § 194)

42. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

43. New York Labor Law § 194 prohibits an employer from paying an employee at a rate less than an employee of the opposite sex for substantially similar work when viewed as a composite of skill, effort, responsibility, and working conditions, unless such differential is based upon a bona fide factor other than sex.

44. In January 2024, Defendant restructured its engineering levels by dividing the "L3" engineering designation into two new tiers: L3A and L3B. All women engineers were assigned to the lower-paid L3A tier, while male engineers were divided between L3A and L3B. A substantial portion of male engineers were promoted to L3B, including several who, upon information and belief, had less experience and lower performance evaluations than Plaintiff and other women in L3A.

45. At the time of this restructuring, Plaintiff had recently received a performance review of 100 and was on track for promotion, according to her manager. There were no material differences in the job duties, responsibilities, or projects assigned to L3A versus L3B engineers, as evidenced by Plaintiff's own experience and her understanding of the work performed by her male counterparts. No clear explanation or criteria for the tier assignments was communicated to Plaintiff.

46. As a result of this assignment, Plaintiff was paid $160,000 in base salary, while L3B engineers were paid $175,000 in base salary, with additional disparities in equity compensation.

**THIRD CAUSE OF ACTION**
*Discrimination on the basis of gender*
(New York City Human Rights Law, N.Y. Admin. Code § 8-107)

47. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

48. The New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a), prohibits an employer from treating an individual less well than others because of gender.

49. To establish a discrimination claim under the NYCHRL, a plaintiff need only show she was treated less well than others at least in part because of her gender.

50. Ms. DiStasi was routinely undervalued and overlooked, given inferior tier designations, denied promotion opportunities afforded to less qualified male colleagues, and excluded from workplace visibility and recognition.

51. Defendant engaged in unlawful employment practice by discriminating against Plaintiff because of her gender, both by refusing to acknowledge, intervene, address, investigate and interrupt a work culture that tolerated and perpetuated gender-based bias and hostility, as well as maintaining potential pay disparities, as evidenced by third-party investigative reporting.

52. Defendant acted with recklessness or willful or wanton negligence, or with a conscious disregard of Plaintiff's rights so reckless as to amount to such disregard.

53. As a result of its actions, Defendant is liable for compensatory, economic, and punitive damages in an amount to be proved at trial.

**FOURTH CAUSE OF ACTION**
*Sexual Harassment*
(New York City Human Rights Law, N.Y.C. Admin. Code § 8-107)

54. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

55. Defendant maintained a work environment where, because of her gender, Plaintiff was treated less well and "less well than other employees." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

56. Defendant's manager made unwelcome, sexually charged comments to Plaintiff, including telling her he "loves Eastern European women" and asking about her childbearing plans. These comments were made because of Plaintiff's sex and national origin, were unwelcome, and were unrelated to her work performance.

57. These acts constitute sexual harassment as defined by New York law, which prohibits any unwelcome conduct of a sexual nature that subjects an employee to inferior terms, conditions, or

privileges of employment.

58. Defendant engaged in unlawful employment practice prohibited by N.Y. Adm. Code § 8-107 by discriminating against Plaintiff because of her gender.

59. Defendant acted with recklessness or willful or wanton negligence, or with a conscious disregard of Plaintiff's rights so reckless as to amount to such disregard.

60. As a result of its actions, Defendant is liable for compensatory, economic, and punitive damages in an amount to be proved at trial.

### FIFTH CAUSE OF ACTION
*Hostile Work Environment*
(New York City Human Rights Law, N.Y. Adm. Code § 8-107)

61. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

62. Beyond sexual harassment, Respondent fostered and tolerated a work culture that demeaned women engineers and treated them less well than their male counterparts.

63. Despite repeated internal complaints, Defendant failed to take corrective action. Offensive conduct went unaddressed, reinforcing a culture that protected discriminatory behavior and perpetuated systemic gender inequity. The lack of accountability and adequate response by Defendant further contributed to the hostile work environment and work culture of protecting offensive conduct towards women and policies that perpetuated gender disparity.

64. Because of her gender, Plaintiff was treated less well and less favorably than other male employees, including her counterparts.

65. Defendant engaged in unlawful employment practice prohibited by N.Y. Adm. Code § 8-107 by discriminating against Plaintiff because of her gender.

66. Defendant acted with recklessness or willful or wanton negligence, or with a conscious disregard of Plaintiff's rights so reckless as to amount to such disregard.

67. As a result of its actions, Defendant is liable for compensatory, economic, and punitive damages in an amount to be proved at trial.

///

## SIXTH CAUSE OF ACTION
*Retaliation*
(New York City Human Rights Law, N.Y. Adm. Code § 8-107)

68. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

69. N.Y.C. Admin. Code § 8-107(7) prohibits retaliation against individuals who have engaged in protected activity, such as opposing discrimination or participating in related investigations.

70. To prevail on a retaliation claim under the NYCHRL, a plaintiff need only show they engaged in protected activity and were treated in a manner that would be reasonably likely to deter someone from engaging in such activity again.

71. Plaintiff engaged in protected activity by repeatedly complaining to Human Resources, and even to the CEO himself, about biased comments and conduct, as well as the results of an independent investigation revealing company-wide gender disparity in pay, including in Plaintiff's own department.  Within weeks of her final complaint, Plaintiff was terminated without legitimate justification.

72. Defendant retaliated against Plaintiff for engaging in protected activity denouncing gender-based discrimination at the company. *See Keceli v. Yonkers Racing Corp.*, 155 A.D.3d 1014, 1016, 66 N.Y.S.3d 280, 283 (2017).

73. Defendant acted with recklessness or willful or wanton negligence, or with a conscious disregard of Plaintiff's rights so reckless as to amount to such disregard.

74. As a result of its actions, Defendant is liable for compensatory, economic, and punitive damages in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against Defendant as follows:

A. An award for actual and compensatory damages, including lost wages, earnings, employee benefits, liquidated damages, and all other sums of money together with interest on these amounts and according to proof;

B. For general, special, and incidental damages according to proof;

C. Pre-judgment and post-judgment interest, as provided by law;

D. Punitive damages;

E. Attorneys' fees and costs under applicable law, including expert fees and costs; and

F. Such additional and further relief as this forum may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and claims with respect to which they have a right to jury trial.

Dated: August 14, 2025  
New York, New York

Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

Robert W. Ottinger  
79 Madison Avenue  
New York, NY 10016  
robert@ottingerlaw.com  
Tel: 347-492-1904  
*COUNSEL FOR PLAINTIFF*